IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.H. STEVEDORING CO. | : | CIVIL ACTION |
| and | : | |
| PENN WAREHOUSING AND | : | |
| DISTRIBUTION, INC., | : | No. 02-CV-4040 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FASIG-TIPTON COMPANY, INC., | : | |
| and | : | |
| FASIG-TIPTON MIDLANTIC, INC. | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM AND ORDER

**JOYNER, J.**                                                August    , 2003

Presently before the Court is the Motion for Summary Judgment of Defendants, Fasig-Tipton Company, Inc. and Fasig-Tipton Midlantic, Inc.[1]  Plaintiffs J.H. Stevedoring ("J.H.") and Penn Warehousing and Distribution, Inc. ("Penn")[2] bring state law claims for conversion, unjust enrichment, and negligence.  For the reasons that follow, the Court will grant Summary Judgment.

### BACKGROUND

Dennis Bishop was a trusted, longtime employee of Plaintiffs, holding various positions with Penn and J.H. from

---

[1] Hereinafter collectively referred to as "Defendants"

[2] Parties may hereinafter be collectively referred to as "Plaintiffs"

1984-1996.  In 1996, Bishop left Plaintiffs to start his own accounting practice.  He returned to J.H. in late 1997 as a consultant and financial controller where he was responsible for approving invoices for payment and reconciling J.H.'s corporate checkbook.  Bishop continued to remain a trusted employee and friend, occasionally socializing with members of the Brown family, the owners and operators of Plaintiffs.[3]

In December 1997, Bishop first stole from Plaintiffs by writing a check to Defendants from Penn's account and forging the signature of one of the Plaintiffs' operators.[4]  Over the next two years, Bishop proceeded to embezzle an amount totaling $1,209,436.[5]  Of that amount, $370,632 was used to purchase horses from Defendants.

Plaintiffs had existing accounting and procedural policies requiring invoices and other supporting documentation with the submission of any check that was signed by an owner, who were the

---

[3] The Brown family owns several companies in addition to Penn and J.H. and are involved in varying degrees with the operations of each company.  The different companies are intertwined in many of their business operations and management.

[4] Bishop stole his first and only check from Plaintiff Penn through forgery in December 1997.  The rest of the stolen checks came from Plaintiff J.H., for whom Bishop acted as the financial controller and had members of the Brown family sign the checks.

[5] Some of the checks were written directly to Defendants.  Others were written to Bishop or his company.

only persons with the authority to sign checks.[6]  Bishop was able to circumvent these policies by fabricating false business emergencies in order to get checks signed immediately by Plaintiffs' owners and operators.  Bishop's activities, however, were never questioned during that period of time because Bishop was a trusted employee and because of the intricacy and complexity of Plaintiffs' insurance arrangements.  Abusing his position as J.H.'s controller, Bishop covered his theft by creating false business entries in the check register and general ledger in order to make his embezzlement appear as legitimate business expenses.

Bishop's embezzlement was finally discovered in February 2000.[7]  While Bishop was away on personal business obligations, Chris Gehricke, the controller for Penn, discovered Bishop's fraud by looking through J.H.'s general ledger.  Looking through the general ledger in order to find some cost figures, Gehricke discovered a few costs which "stuck out" to him.  Gehricke Dep. at 64.  Upon further investigation, Gehricke discovered Bishop's

---

[6] Several members of the Brown family were authorized to sign J.H. checks, even if they were not familiar with the details of the company.  As a result, Bishop was able to get many of his checks signed by those members who were unfamiliar with J.H.'s operations.  Additionally, many of the checks were signed without the necessary supporting documentation.

[7] J.H. had an outside accounting firm, Zelnick, who was also responsible for Plaintiffs' accounts.  Zelnick, however, failed to discover Bishop's embezzlement and settled with Plaintiffs for negligence in their duties owed to Plaintiffs.

fraud, whereupon Plaintiffs contacted the FBI.  Plaintiffs then filed their complaint against Defendants on June 24, 2002.[8]

## DISCUSSION

Plaintiffs allege claims of conversion, negligence, and unjust enrichment against Defendants, arguing Defendants owed a duty of care to Plaintiffs in accepting Plaintiffs' checks from Bishop in the sale of horses.  In response, Defendants move for Summary Judgment.

I.   Legal Standard

In granting a motion for summary judgment under Fed. R. Civ. P. 56(c), it must be shown that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1984).  There is no such issue unless there is sufficient evidence favoring the nonmoving party

---

[8] Plaintiffs initially filed an action against Defendants on December 14, 2000.  The parties, however, agreed to voluntarily dismiss the suit without prejudice and toll the statute of limitations from that day while Plaintiffs filed suit against other parties.  Plaintiffs re-filed suit against Defendants on June 24, 2002.

for a jury to return a verdict for that party.  <u>Id</u>.  In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  <u>Id</u>.

II.  <u>Plaintiffs' Claims of Conversion and Negligence</u>

**A.   Statute of Limitations**

Under Pennsylvania law, there is a two-year statute of limitations for claims of conversion and negligence.  42 PA. C.S.A. § 5524(2),(3).  Generally, the statute of limitations begins when the plaintiff's cause of action accrues; although, there are certain instances where the statute of limitations may be tolled.  <u>New Castle v. Halliburton NUS Corp.</u>, 111 F.3d 1116, 1124 (3d Cir. 1997); <u>Hayward v. Med. Ctr. of Beaver County</u>, 608 A.2d 1040, 1043 (Pa. 1992).  Lack of knowledge, mistake or misunderstanding, however, do not toll the running of the statute of limitations.  <u>Wilder v. U.S.</u>, 230 F. Supp. 2d 648, 652 (E.D. Pa. 2002)(citing <u>Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.</u>, 468 A.2d 468, 471 (Pa. 1983)).  The statute of limitations is tolled only if a reasonable person in the plaintiff's position would not have been aware of the salient facts.  <u>Pitts v. Northern Telecom, Inc.</u>, 24 F. Supp. 2d 437, 441 (E.D. Pa. 1998).  A party asserting a claim has a duty to use all reasonable diligence to initiate the suit within the proper limitations

5

period. <u>Baumgart v. Keene Bldg. Products Corp.</u>, 666 A.2d 238, 240 (Pa. 1995). If the injury and its cause can be reasonably ascertained within the two-year statutory period, no tolling occurs. <u>In re Latex Gloves Products Liability Litigation</u>, 152 F. Supp. 2d 667, 671 (E.D. Pa. 2001)(citing <u>Baumgart</u>, 666 A.2d at 240).

The point of time at which the plaintiff should reasonably be aware that he or she has suffered an injury is usually an issue of fact to be determined by a factfinder. <u>Spade v. Star Bank</u>, No. 90 A.F.T.R.2d 2002-7147, 2002 WL 31492258, *9 (E.D. Pa. November 6, 2002)(citing <u>Sadtler v. Jackson-Cross Co.</u>, 587 A.2d 727, 732 (Pa. Super. Ct. 1991)). The commencement of the limitations period, however, may be determined as a matter of law where the facts are so clear that reasonable minds cannot differ. <u>Hayward</u>, 608 A.2d at 1043. When the only reasonable conclusion from the competent evidence of record construed most favorably to the plaintiff is that the time it took for the plaintiff to file suit was unreasonable, summary judgment should be granted. <u>Pitts</u>, 24 F. Supp. 2d 437 at 441.

Applying Pennsylvania law, Plaintiffs' claims of conversion and negligence are barred by the statute of limitations. While Plaintiffs' claims accrued in early 1998, Plaintiffs filed their claims outside the proper limitations period in December 2000, almost a year after the expiration of the statute of limitations.

Plaintiffs argue that they did not discover that they had a legal claim until February 2000.[9]  Their lack of knowledge, however, does not toll the commencement of the statute of limitations.  Plaintiffs' injury was of a type that could be discovered had they exercised reasonable diligence in properly monitoring their employee's activities.[10]  Plaintiffs instead turned a blind eye and assumed the risk that the employee whom they had entrusted with their company's finances would not abuse his position and steal from Plaintiffs.

Bishop stole his first check from Plaintiff Penn in December 1997.  In the following months, upon receipt of its monthly bank statements, Plaintiffs had an opportunity to discover Bishop's theft.  Examination of the bank statement reflecting December's account activity would have shown a check that was written out to Fasig, a company Plaintiffs had never done business with before, in the amount of $8,000.  Further investigation would have revealed that Bishop used the check to steal from Plaintiffs and purchase a horse for his own personal purposes.  Plaintiffs, however, were negligent in failing to examine their own monthly

---

[9] Upon discovery of Bishop's theft.

[10] The embezzlement was not of such a complex or hidden nature that checking the general ledger would not have revealed the theft.  Chris Gehricke, the financial controller for Penn, was able to discover the fraud by looking through J.H.'s general ledger.  Gehricke noted that several cost expenditures stuck out at him.  Further inquiry into those costs allowed him to discover the fraud.

bank statements -- both December 1997's and subsequent monthly statements.

While Plaintiffs' cause of action accrued upon receipt of December's bank statement in early 1998, Plaintiffs failed to file their action against Defendants within the proper limitations period. Plaintiffs did not file their first action against Defendants until December 2000, almost a year after the statute of limitations expired.

Plaintiffs argue that the determination of when the statute of limitations commenced is a question of fact which must be determined by a fact finder. Plaintiffs also argue that as financial controller of J.H., Bishop was able to cover his illicit activities thereby preventing Plaintiffs from discovering his embezzlement. Plaintiff's argument, however, overlooks their own negligence in failing to properly monitor and supervise their employee. See Menichini v. Grant, 995 F.2d 1224, 1235 (3d Cir. 1993)(finding that employer's own negligence in failing to properly supervise and control employee's behavior substantially contributed to employee's embezzlement). Plaintiffs chose to repose within a single employee the functions of bank reconciliation and bookkeeping without adequate supervision. Additionally, Plaintiffs had opportunity to be on notice of Bishop's theft in January 1998 when they received their first bank statement. The first check that Bishop stole was from

8

Plaintiff Penn.  Despite the collaborated processes the companies shared, Bishop had no position within Penn.  Instead, Penn had its own financial controller, who should have been on alert that a check was made out to Defendants, a company foreign to Plaintiff's business dealings.  Furthermore, Plaintiffs had an outside accountant who should have discovered the theft.  The accountants, in addition to Plaintiffs, were negligent by failing to discover Bishop's embezzlement while it occurred over a two year span.

For their part, Defendants did nothing to hide or conceal the fact that they were accepting Plaintiffs' checks.  Defendants exhibited no indication of fraud which would have prevented Plaintiffs from discovering Bishop's theft had Plaintiffs exercised reasonable diligence and carefully monitored their employee's actions.  Instead, Plaintiffs were negligent in preventing Bishop's theft in the first place.  Their own negligence in failing to exercise reasonable diligence, supervise their own employee, and the negligence of their accountants contributed to their filing this suit after the expiration of the statute of limitations.  Therefore, we find that Plaintiffs' claims of conversion and negligence are barred by the statute of limitations.

**B.   Plaintiffs' Claims of Conversion and Negligence**

Even if the statute of limitations had not expired on Plaintiffs' claims of conversion and negligence, the granting of summary judgment is still appropriate as to Plaintiffs' claims of conversion and negligence.

In defense against Plaintiffs' claims, Defendants argue they are holders in due course and are in proper retention of Plaintiffs' checks. According to Pennsylvania statute, a party may be found to be a holder in due course if the holder took an instrument "(i) for value; (ii) in good faith; and ... (v) without notice that any party has a defense or claim in recoupment." 13 PA. C.S.A. § 3305(a)(2). Defendants have met each of the necessary criteria to be found a holder in due course. Defendants acted as any reasonable company would in their normal course of business with Bishop. There was an exchange of goods (horses) for money. Defendants carried out legitimate business transactions and they had no indication that Bishop lacked Plaintiffs' authority. Bishop purchased horses using Plaintiff checks, signed by Plaintiffs' owners and operators, for over two years without any objections from the Plaintiffs.

Plaintiffs argue that the defense of a holder in due course may be overcome when there is fraud that induces the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms. 13

PA. C.S.A. § 3305(a)(1)(iii).  The obligor, however, must have had no reasonable opportunity to obtain knowledge of the fraud, otherwise, the defense is cut off by a holder in due course.[11] In the present case, Plaintiffs, with the use of an outside accounting firm, had two years to discover Bishop's theft.  Thus Plaintiffs had reasonable opportunity to discover the fraud.

    Plaintiffs further argue that whether Defendants exhibited good faith is a factual issue that must be determined by a jury. Under normal circumstances, good faith for the purpose of determining whether a party is a holder in due course is a question for a jury, but, where evidence is undisputed and

---

[11] See 13 PA. C.S.A. § 3305(a)(1)(iii) and accompanying notes.  Subsection (a)(1)(iii) refers to "real" or "essential" fraud, sometimes called fraud in the essence or fraud in the factum, as effective against a holder in due course. The common illustration is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that the signature on the instrument is ineffective because the signer did not intend to sign such an instrument at all. Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms. The test of the defense is that of excusable ignorance of the contents of the writing signed. **The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge**. In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the intelligence, education, business experience, and ability to read or understand English of the signer. Also relevant is the nature of the representations that were made, whether the signer had good reason to rely on the representations or to have confidence in the person making them, the presence or absence of any third person who might read or explain the instrument to the signer, or any other possibility of obtaining independent information, and the apparent necessity, or lack of it, for acting without delay. Unless the misrepresentation meets this test, the defense is cut off by a holder in due course. (Emphasis added).

conclusive, it is the court's duty to decide the point as a matter of law. Manufacturers & Traders Trust Co. v. Murphy, 369 F.Supp. 11, 13 (E.D. Pa. 1974), *aff'd*, 517 F.2d 1398 (3d Cir. 1975); see Triffin v. Dillabough, 716 A.2d 605, 612 (Pa. 1998)(stating that where facts are undisputed and conclusive, holder in due course status can be determined as a matter of law). Having received Plaintiffs' checks from Bishop for two years without Plaintiffs' objection, the Defendants exhibited good faith with respect to acceptance of Plaintiffs' checks.

In their claim of negligence, Plaintiffs argue that Defendants owed a duty of care to Plaintiffs in receiving and handling Plaintiffs' checks. Defendants, however, owed no such duty to Plaintiffs. They owed no fiduciary duty to examine and investigate every check that was received. Defendants acted the way any normal business would in the course of a legitimate commercial transaction. Among the parties involved, Plaintiffs were in the best position to prevent Bishop's theft. Finding no genuine issue of material fact, we find Defendants are entitled to judgment as a matter of law on the counts of conversion and negligence.

### III. Plaintiffs' Unjust Enrichment Claim

Plaintiff's last claim against Defendants is for unjust enrichment. As holders in due course, Defendants were not

unjustly enriched. As stated above, they acted reasonably in the normal course of business and provided horses in exchange for money in legitimate business transactions.[12] Therefore, we find that Defendants are entitled to summary judgment on the count of unjust enrichment.

## Conclusion

An appropriate Order follows.

---

[12] It is also noted that Plaintiffs have recovered $986,150.96, or about 84%, of their $1,170,286 in losses from settlements with other parties. This recovery includes the sale of horses Bishop purchased from Defendants, yet Plaintiffs persist in their action against Defendants for $370,632.

```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

J.H. STEVEDORING CO.           :    CIVIL ACTION
    and                        :
PENN WAREHOUSING AND           :
DISTRIBUTION, INC.,            :    No. 02-CV-4040
                               :
            Plaintiffs,        :
                               :
    v.                         :
                               :
FASIG-TIPTON COMPANY, INC.,    :
    and                        :
FASIG-TIPTON MIDLANTIC, INC.   :
                               :
            Defendants.        :
```

### ORDER

AND NOW, this         day of August, 2003, upon consideration of Defendants Fasig-Tipton Company, Inc. and Fasig-Tipton Midlantic, Inc.'s Motion for Summary Judgment and Plaintiffs J.H. Stevedoring Co. and Penn Warehousing and Distribution, Inc.'s response thereto, it is hereby ORDERED that, for the reasons set forth in the accompanying Memorandum, the Motion is GRANTED.

                                    BY THE COURT:


                                    _____
                                    J. CURTIS JOYNER, J.